THE MORRIS PLAN BANK OF CLEVELAND, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 68226. Promulgated October 3, 1934.

*Francis R. Lash, Esq.*, for the petitioner.
*Arthur Carnduff, Esq.*, and *E. M. Woolf, Esq.*, for the respondent.

OPINION.

SEAWELL: The respondent determined a deficiency of $359.85 in income tax against the petitioner for 1930 by disallowing, among other deductions, the sum of $2,500 claimed as a deduction for exhaustion of the cost of a license to use a copyrighted system of conducting a loan and investment business, known as "The Morris Plan." Whether or not such action on the part of the respondent was proper is the only question before us for decision.

From the stipulation of facts, which constitutes the only evidence before us, it appears that the petitioner is an Ohio corporation existing under a perpetual charter. In 1916 it paid to the Industrial Finance Corporation, a Virginia corporation, the sum of $50,000 for, among other things, the exclusive right to use a system, including trade name, trade-mark, copyrights, and forms, together with

all renewals and improvements thereof and additions thereto, necessary for conducting and operating a loan and investment business in Cuyahoga County, Ohio, for an indefinite period. The system was copyrighted by the Industrial Finance Corporation on April 1, 1910. The trade name and trade-mark for the system was "The Morris Plan." In its return for 1930 the petitioner claimed as a deduction the sum of $2,500 for exhaustion of the cost of the right or license to use the copyrighted system. The respondent disallowed the deduction on the ground that the right to use the property was unlimited as to time.

The petitioner claims that it will be protected against the use of the copyrighted system in Cuyahoga County, Ohio, by others only until 1938, the year in which the original term of copyright will expire, and even though its corporate existence is perpetual and the legal right exists to renew the copyright for an additional period of 28 years, it should be permitted to deduct the cost of the asset, which is claimed to be $50,000, ratably over a period of 22 years. The respondent contends, among other things, that the intangible asset has an indefinite life and, accordingly, is not subject to exhaustion, citing *Coca-Cola Bottling Co.*, 6 B. T. A. 1333.

There is no need to decide whether the life of the license to use the system, including the trade name and trade-mark, is limited to 20 years as claimed by the petitioner, 22 years as computed on the basis of the original term of the copyright, or indefinite as claimed by the respondent, because irrespective of such a determination we would be compelled to sustain the respondent. The petitioner's claim is predicated upon the fact that it paid $50,000 for the license. Reference to the contract of January 27, 1916, between the petitioner and the Industrial Finance Corporation, under the terms of which the right was acquired, discloses that the sum was paid for more than the mere right to use the copyrighted system.

By the provisions of the contract the Industrial Finance Corporation agreed to install in the office of the petitioner a complete system of accounts and to furnish without cost to the petitioner a complete initial set of books and forms necessary for the proper operation of its business; to pay all expenses involved in organizing the petitioner, including legal fees and charter costs, and at its own expense to install the system and supervise the opening of the books and instruct the petitioner's officers and employees in the conduct of the petitioner's affairs for such period as the Industrial Finance Corporation deemed necessary; to furnish from time to time statistical information of the business of other corporations operating under "The Morris Plan" and other information of assistance to the petitioner in perfecting its methods according to the system,

and such sample copies of its literature, publicity pamphlets, advertising matter, and statistical records as may be helpful to the petitioner in the preparation of advertising matter; and to render legal services in matters pertaining to the operation of petitioner's business.

Section XVIII of the contract, pursuant to the terms of which the sum of $50,000 was paid, reads in part as follows:

The COMPANY further agrees, in consideration of the transfer to it by the CORPORATION of the right to operate "The Morris Plan" in the territory aforesaid under the terms of this Contract and in further consideration of the rights and benefits assigned and transferred to it by this Contract and in further consideration of the services rendered and to be rendered and the expense incurred and to be incurred by the said Corporation in the premises, to pay to the CORPORATION a sum equal to Ten Dollars ($10.00) per share of the par value of One Hundred Dollars ($100.00), or its equivalent, on its original issue of capital stock of Five Hundred Thousand Dollars ($500,-000.00). * * *

This provision of the contract shows beyond question that the petitioner paid the sum of $50,000 not only for the exclusive right to use the copyrighted system of conducting a loan and investment business, but also for the use of the trade-mark and trade name known as "The Morris Plan," organization expenses, books, forms, and services rendered and to be rendered, etc. Organization expenses may not be deducted as ordinary and necessary business expenses nor amortized ratably over the period of the corporation's life. *Surety Finance Co. of Tacoma*, 27 B.T.A. 616. Such costs may be deducted as a loss when the corporation is dissolved. *Malta Temple Association*, 16 B.T.A. 409. Trade-marks are not subject to exhaustion with the passage of time. *Norwich Pharmacal Co.*, 30 B.T.A. 326. Other items for which the amount was paid constitute ordinary and necessary business expenses deductible in the year paid. The record furnishes no basis for determining the cost of the license to use the copyrighted system known as "The Morris Plan" and if we were to decide, as we do not, that the license is subject to exhaustion, we would lack a basis for making any allowance. Under the circumstances, we must sustain the action of the respondent in disallowing the deduction in question.

*Decision will be entered for the respondent.*